[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This custodial dispute involves a plaintiff husband, aged 43, and a defendant wife, aged 33, who married in Bethany, Connecticut, on June 30, 1979, twelve years ago. It was his second marriage, her first. They have both resided continuously in this state for the past twelve years. Neither are recipients of public assistance from the State of Connecticut or of any governmental subdivision.
There are three minor children born of this marriage:
Kyle Matthews, born May 25, 1981, now ten years of age,
 Brian Matthews, born December 27, 1983, now seven years of age, and
Scott Matthews, born October 6, 1985, now six years of age.
Findings re:
Joint Custody
Throughout the eight days of trial, this court was held captive by the appellate rulings of Emerick v. Emerick, 17 Conn. App. 811 (1988), and its satellites. The court, the father and the children were all forced to litigate under the stress of being denied the option of joint custody. As the trial progressed, it became increasingly clear that joint custody was in the best interests of the children. Yet it was not until final argument, until after the trial itself had concluded, until after each of the three parties has prepared their Post-Trial Memorandum and Proposed Orders, that defendant mother waived her objection to plaintiff father's Request for Leave to Amend Complaint, and permitted the joint custody option to become available to the court.
A continuing and close relationship with their father is clearly in CT Page 9206 the best interests of these minors. Fortunately, the father is eager to provide that relationship. The mother is ambivalent. She recognizes some value to the continuing father-sons relationship but is eager to minimize the confusion generated by his access to the boys. Now that mother has refocused her life, the logistics of father's involvement create an inconvenience. Her past behavior, some of it petty, makes it clear she was not able to see the father as filling a parenting role equal to her own, nor was she able to see it as a relationship truly worthy of her respect. It was a bother. She may be responding to the understandable irritation of seeing her husband, who ceded her primary parenting role during early marriage, elbowing his way into the front of the parenting stage with her now that the boys are companionable and a divorce is in their future. Father is entitled to mature and to recognize the great value of his close and continuing relationship with the children. The court welcomes his awareness. Certainly the children do. It would be helpful if mother did the same.
Parental Access to the Children
Much testimony, and a high proportion of final argument, was directed towards the scheduling of parental access. The court was offered a parade of teachers, likely decimating the curriculum at Norton School, few of whom were able or willing to shed light on the custodial/access issues. The unfruitful intrusion into their professional lives, and the resultant financial burden imposed upon the Board of Education for substitute teachers, embarrassed the court.
The court found the most valuable and credible witnesses to be the family relations counselor, Joseph Iassongna, the Norton School Guidance Counselor, Jane O'Brien, the children's pediatrician, Dr. Louis DiMauro and the children's therapist, Dr. Michael Bellotti. It was also of value to the court to have observed and heard the viewpoints of Paul Munson, Mr. Matthews and Mrs. Matthews.
It is clearly in the best interests of the minor children to have equal access to each of their parents.
Fault
Though wife claimed the marriage had broken down before her emotional and physical intimacies with Paul Munson began, the court believes her relationship with Mr. Munson preceded and was the major cause of the breakdown of their marriage. Certainly the Matthews marriage had problems prior to Mr. Munson's arrival on the scene, but the more credible evidence indicates the marriage was troubled but intact when they met, late in 1988, and was still intact when their sexual relationship began in a New Haven motel, sometime during the summer of 1989. Neither Mr. Munson nor Mrs. Matthews were able to recall the date of their first sexual intimacy. CT Page 9207
Child Stress
Much of the trial testimony was directed towards recounting the many ways in which the children, particularly Brian, were exhibiting stress. The suggestions were that the other parent was responsible for the problems generated by that stress. Inadvertencies were amplified; normalities were exaggerated. The court concludes that the children's pains and problems, their stresses and behavorial lapses, were not the fault of either parent but, rather, were the childrens' response to the terror they experiences as they watched their parents war and their family disintegrate. Neither parent monopolized inappropriate behavior.
Income
With regard to the income of the parties, the court finds the plaintiff father's gross weekly income from the Derby Board of Education, the Copper Valley Club and the Jewish Community Center of Greater New Haven to be $1300 and his net weekly wages of $869. Defendant mother's weekly gross totals $690 and her weekly net is $498.
Child Support
For purposes of computing child support, this court deducts Mr. Matthews educator's retirement program of $70.90 a week in lieu of social security, his weekly union dues of $9.55 and the support payment of $40 he makes each week for his minor child from his first marriage in addition to his federal and Connecticut income taxes and his social security deductions. Mrs. Matthews deductions are her federal and state income taxes and her social security. The sworn financial affidavits are the most credible sources of each of those incomes.
The current child support guidelines recommend payments to the custodial parent of $335 per week. Following a review of the Deviation Criteria, pages 8 and 9 of the Guidelines, however, the court finds that application of the guidelines would be inequitable and inappropriate in view of the court's orders.
Marital Assets
 Equity in 130 Rockview Drive, Cheshire: $50,749.36 IDS Annuity Account: 4,840.89 IDS Insurance: 4,655.89 Holden Group Securities: 4,544.00 USRG OC Securities: 371.98 Teacher's Retirement — 5% portion: 39,384.00 — 1% portion: 6,443.29 CT Page 9208
 Based upon testimony of William Sudol and Richard E. Brandt
 Cyanamid matched funds 3,764.89 Cyanamid Retirement — not yet vested — no value submitted Cyanamid 401K 448.40 ------ TOTAL: $115,202.70
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following orders shall apply:
1. LEGAL CUSTODY
a. The parties shall have joint custody of the minor children.
b. Each of the parents is a fit and proper person to have responsibility for the care, custody and education of the minor children.
c. Each of the parents shall continue to have a full and active role in providing a sound moral, economic, social and educational environment for the children.
d. The parents shall consult one another in issues relating to religious upbringing, educational programs, significant changes in social environment, the childrens' programs and activities and the non-emergency health care of the children.
e. Each of the parents shall exert every effort to maintain free access and unhampered contact and to foster a feeling of affection between the children and the other parent. Neither parent shall do anything which would estrange the children from the other parent, which would injure the opinion of any of the natural development of any child's love and respect for each of the parents.
f. Defendant mother shall have final decision making power with respect to health decisions and educational decisions if both parents are unable to agree, provided she has first informed the plaintiff of the circumstances surrounding the issues, consulted with him about the issues and made a sincere attempt to reach agreeable solutions. Mother's final decision making powers are not to be used abruptly or insincerely.
g. Defendant mother, in seeking the powers set forth in CT Page 9209 paragraph 1. f., above, have assured this court that she is willing to pursue joint counselling with the plaintiff father to resolve communications problems, should they arise. That assurance is the premise upon which those powers were extended to defendant mother. The inability to reach mutual solutions is to be regarded as a communication problem. The court assumes any such counselling will be held with a counselor independent counselor, Attorney for the Minor Children Ann P. Coonley would be an appropriate source.
2. PHYSICAL CUSTODY
a. The parties shall have joint physical custody of the minor children.
b. The co-operating schedule shall be as follows:
First Week — Mrs. Matthews: Monday at 9 am to Wednesday at 3 pm. — Mr. Matthews: Wednesday at 3 pm to Monday at 9 am.
Second Week — Mrs. Matthews: Friday at 9 am to Wednesday at 3 pm. — Mr. Matthews: Wednesday at 3 pm. to Friday at 9 am.
c. All day-to-day decisions relating to the children's upbringing shall be at the discretion of the parent with whom the child is staying.
d. Neither parent shall arrange for special events or activities which coincide with the other parent's access until first receiving an affirmative response from the other parent.
e. From time to time, the court hopes exceptions to the co-parenting schedule will be considered for occasions which arise outside the regular schedule in accordance with the needs of the parents and the best interests of the children. Such times would include, but not be limited to, special events for one or all of the children, special social events for the parents or the children, a parent's employment schedule, or the sickness of a parent or a child. Such exceptions, mutually agreed upon by both parents, would be a welcome indication of parental maturity.
f. The children shall spend two uninterrupted individual weeks during the school summer vacation period with each parent after thirty days written notice.
g. In addition to the above, Mr. Matthews may choose a third individual week of uninterrupted school vacation time for his parent's access to the children. The third week may take place wherever the grandparents, who live in Colorado, choose. If the grandparents' choice of a school vacation week interferes with either of mother's choices, mother's choices shall have precedence. CT Page 9210
h. If the parent, or grandparent, with whom the children are vacationing remains in the vicinity, the other parent may visit the children from 5 pm to 7 pm on the third, fourth or fifth day of that week, whichever day is most convenient to both parties.
i. The children may have reasonable daily telephone contact with the absent parent during access and vacations. Except in emergencies, all such contact is to be initiated by the children. Parents' calls in response, if the children are unable to make contact, shall be normally limited to the hours between 6 pm to 8 pm.
3. HOLIDAYS
 a. Mother's Day — from previous evening with mother annually Memorial Day — with father annually Father's Day — from previous evening with father annually July 2nd (father's birthday) — with father annually July 4th — alternate — with mother 1992 July 15th (mother's birthday) — with mother annually Labor Day — with mother annually Halloween — split evening alternately — mother starts in `91 Thanksgiving Day — alternate — with mother 1991 Christmas — alternate — (1.) beginning of Christmas school vacation to Christmas Day at 5 pm and (2.) Christmas Day to 5 pm to the end of the Christmas school vacation the next year. Father begins with (1.) in 1991.
b. Holidays shall take precedence over both the co-parenting schedule at paragraph 2. b., above, and the school vacations at paragraph 4. b., below.
c. Children's birthdays will be celebrated as they fall within the access schedule.
4. SCHOOL VACATIONS
a. All school vacations shall alternate between the parents.
 b. Columbus Day — with mother first Veterans Day — with father first Christmas vacation — see paragraph 3 a., above Martin Luther King Day — with father annually President's Day — with mother annually February vacation — with mother first April vacation — with father first
c. If father's school holidays coincide with the children's school holidays, and mother has no holiday from work, the children shall spend such holidays with Mr. Matthews. This shall also apply to rainy days or other inclement days when Mr. Matthews is unable to work CT Page 9211 while Mrs. Matthews employment is uninterrupted. The time spent with Mr. Matthews under these circumstances shall coincide only with the time Mrs. Matthews is working and traveling to and from work.
d. If either parent finds it necessary to hire a day-time sitter, the first option to be explored shall be the other parent for day-time hours.
e. School holidays shall take precedence over the co-parenting schedule at paragraph 2. b., above.
5. CHILD SUPPORT
a. Because the parents will each be sharing responsibility for the children as well as sharing the childrens' time, there are some child related expenses that are inappropriate for one parent to assume. Thus, the court directs the parties to share equally the following child related expenses:
 i. childrens' activity fees, uniforms and equipment ii. childrens' school expenses iii. childrens' allowances iv. childrens' sitters — for employment hours only v. childrens' unreimbursed medical, dental, optical, prescription, mental health or other expenses reasonable and necessary to maintain the children's mental and physical health. vi. childrens' lessons and related equipment or supplies
b. Because access to the children is shared, and because some of the child related costs will be shared, above, the court finds that adopting the Child Support Guidelines would be inequitable and inappropriate.
c. Plaintiff father shall pay defendant mother $270 a week as child support.
6. ALIMONY
In view of the court's conclusion regarding the cause of the dissolution of the marriage, neither party shall pay alimony to the other.
7. DIVISION OF ASSETS
a. Plaintiff shall quit claim all his right, title and interest to the family home at 130 Rockview Drive, Cheshire, Connecticut, to the defendant.
b. From and after the date of transfer, defendant shall hold said CT Page 9212 property free of any claim thereto by plaintiff.
c. Defendant shall be solely responsible for the existing first mortgage and equity line of credit, and all mortgages, liens and encumbrances accruing thereafter with respect to the aforesaid real estate, including real property taxes. Defendant agrees to pay, indemnify, and hold the plaintiff harmless from any claim, demand or suit by anyone holding or claiming a lien on the aforesaid premises.
d. Defendant shall retain her title to:
 Cyanamid Retirement Fund her 401K Cyanamid Matched Fund
e. Plaintiff shall receive:
 USFG O. C. Securities Holden Group The Cash value of the IDS insurance policy on his life. His Connecticut State Teachers Retirement — 5% and 1% His IDS Annuity
8. LIFE INSURANCE
a. Plaintiff shall maintain $200,000 of insurance on his life for the benefit of the minor children, naming defendant as irrevocable beneficiary thereof, and shall maintain said level of life insurance without encumbering it in any manner.
b. Defendant shall maintain $100,000 of insurance on her life for the benefit of the minor children, naming plaintiff as irrevocable beneficiary thereof, and shall maintain said level of life insurance without encumbering it in any manner.
c. Each of the parties will provide proof of the existence of said insurance in a form satisfactory to the beneficiary upon the request of the beneficiary, no more than once each year.
9. PERSONAL PROPERTY
a. Defendant shall have title to all the personal property located at 130 Rockview Drive, Cheshire.
b. In addition, all personal property now in the possession or control of the plaintiff or defendant shall be the sole and exclusive property of that party.
10. TAX DEDUCTIONS CT Page 9213
a. Plaintiff shall be entitled to claim Brian and Scott as his tax deductions
b. Defendant shall be entitled to claim Kyle as her tax deduction.
11. MEDICAL INSURANCE
a. Plaintiff shall maintain medical insurance for the benefit of the minor children as available through his place of employment.
b. The provisions of 46b-84(c) shall apply.
12. ATTORNEYS' FEES
a. Each of the parties shall be responsible for the payment of their own attorney's fees.
b. The court finds the bill of Ann P. Coonley, the Attorney of the Minor Children, to be a fair and equitable one.
c. Each of the parties is to pay one half of Attorney Coonley's full bill within one year of this date. Payments shall be in a minimum of one-twelfth of each party's unpaid share and shall begin December 1, 1991 and be paid on the first day of each month thereafter, time being of the essence.
d. The court wishes to express its appreciation to Attorney Coonley for the fine quality of her representation. She was a beacon of sanity.
13. DEBTS
a. Each of the parties shall be responsible for the payment of those liabilities listed on their sworn financial affidavits.
14. NEGOTIATION
The court recognizes that the parties may have mutual preferences that have not been revealed to the court during the trial and which the court may have inadvertently thwarted. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore, the court empowers the parties to confer and to seek mutually acceptable variations of the court's orders. Any such mutually negotiated modifications are to be submitted directly to the undersigned in written form, signed by all three counsel, the plaintiff and the defendant no later than thirty days after this judgment, without costs and without the need to establish a substantial change of circumstances. Beyond that date, or before any other court, modifications shall be by the traditional route and must meet all the CT Page 9214 more formal requirements.
15. APPEAL
All foregoing orders with respect to custody and visitation shall stand and operate as interim orders of this court during the pendency of any appeal.
Joseph L. Steinberg, Judge